IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BILLY RICHMOND, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 04 C 1091 |
| VILLAGE OF ROBBINS POLICE OFFICER DION KIMBLE, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Billy Richmond brings this one-count Amended Complaint alleging unreasonable seizure under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Defendant Village of Robbins Police Officer Dion Kimble. Specifically, Richmond alleges that Detective Kimble used false information or information that he should have known to be false to obtain a warrant for Richmond's arrest. Before the Court is Detective Kimble's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) based on Detective Kimble's claim of qualified immunity. For the following reasons, the Court grants Detective Kimble's motion.

**BACKGROUND**

During all times relevant to the allegations in Richmond's Amended Complaint, Detective Kimble was a Detective Sergeant with the Village of Robbins Police Department. (R. 40-1, Def.'s Local Rule 56.1 Statement, ¶ 2.) At the end of August 2001, the Crestwood, Illinois, and Robbins Police Departments formed a Narcotics Task Force ("Task Force"). (*Id.* ¶ 7.) Once the Task Force selected a target area, the undercover officers would approach the area

in an undercover vehicle while other task force members watched from unmarked vehicles nearby. (*Id.* ¶ 8a). If the undercover officers successfully purchased narcotics, they would proceed to a rendezvous location and radio the surveillance officers about the purchase. (*Id.* ¶ 8c.) The officers would then provide the surveillance officers with a description of the seller. (*Id.*) Thereafter, Robbins police officers would proceed to the "buy location" to obtain information and detain the individuals. (*Id.* ¶ 8d.) The undercover officer who made the purchase would drive to the "buy location" in an unmarked vehicle and identify the seller from inside the vehicle. (*Id.* ¶ 8e.) Next, an officer would radio the identification of the seller to the Robbins police officers on the street. (*Id.* ¶ 8f.) The Robbins police officers would then match a name with the seller. (*Id.*). Eventually, the officers used this information to obtain an arrest warrant. (*Id.* ¶ 8g.) The Task Force did not immediately arrest the sellers because doing so would reveal the undercover officers' identities. (*Id.* ¶ 9.)

Around dusk on September 28, 2001, the Task Force gathered at the Crestwood Civic Center to plan the evening's operations. (*Id.* ¶ 11.) Defective Kimble was present to perform surveillance of the operation, as well as Detective Sergeant Terrance Franklin of the Robbins Police Department and Commander John Pace of the Crestwood Police Department. (*Id.* ¶¶ 11a, b.) Crestwood Police Officers Mark Pawlak and Theresa Neubauer were present for the undercover buy. (*Id.* ¶ 11c.) That evening, the Task Force targeted the residence at 13710 Kedvale in Robbins, Illinois. (*Id.* ¶ 12.) With Officer Neubauer in the passenger seat, Officer Pawlak drove an undercover vehicle to 13710 Kedvale with the intent to purchase narcotics. (*Id.* ¶ 15.) As they approached the "buy location," Officer Pawlak saw a group of individuals standing in front of the home. (*Id.* ¶ 16.) Officer Pawlak stopped in front of the buy location and

2

a seller immediately approached his vehicle. (*Id.* ¶ 17.) Officer Pawlak told the seller "one" which means that he wanted to purchase crack cocaine. (*Id.* ¶ 18.) The seller handed a small bag containing a rock of cocaine to Officer Pawlak. (*Id.* ¶ 19.) In exchange, Officer Pawlak handed the seller $20 in United States currency. (*Id.* ¶ 20.)

Upon completion of the drug transaction, Officer Pawlak returned to the Crestwood Civic Center. (*Id.* ¶ 22.) Officer Pawlak testified that either Officer Neubauer or he radioed in the seller's description as: "A male, black subject wearing a grey hooded sweatshirt and light grey pants." (Pl.'s Resp. to Def.'s Stmt. ¶ 21, R. 48-1, Plaintiff's Original Rule 56.1 Statement of Additional Facts, Ex. D., Pawlak Dep. at 17.)

Meanwhile, Detectives Franklin and Kimble proceeded to a location about a block from 13710 Kedvale. (Def.'s Stmt. ¶ 27.) Although Detective Kimble claims that he saw the drug transaction through his binoculars from the surveillance vehicle, evidence in the record reveals that Detective Kimble did not see the clothing that the seller was wearing, could not see the seller's face, and did not see what was handed to the undercover officer. (Pl.'s Resp. to Def.'s Stmt. ¶¶ 28, 29, Ex. B, Kimble Tr. Test., at 114-16.) Shortly thereafter, the undercover officers radioed Detective Kimble that they had successfully purchased narcotics from an individual at 13710 Kedvale. (Def.'s Stmt. ¶ 30.) After this notification, Detectives Franklin and Kimble proceeded to the buy location to identify the seller by name. (*Id.* ¶ 32.)

It is undisputed that Detective Franklin told Detective Kimble that he recognized Billy Richmond at the buy location because Richmond had previously worked for Franklin in his landscaping business. (R. 55-1, Plaintiff's Second Rule 56.1 Statement of Additional Facts ¶ 2, Def.'s Resp. to Pl.'s Orig. Stmt. ¶ 2; Def.'s Stmt.¶ 34.) Detective Franklin told Detective

3

Kimble that he did not believe Billy quit working for him to sell drugs. (Pl.'s Orig. Stmt.¶ 2, Def.'s Stmt., Ex. A, at 18.) After the detectives arrived at the buy location, they detained approximately five individuals who were standing at that location, including the individual whom Detective Franklin identified as Richmond. (*Id.* ¶ 35.) While detaining these individuals, Detective Kimble radioed the undercover officers and told them to return to the buy location in order to make a positive identification. (*Id.* ¶ 36.) Meanwhile, Detectives Franklin and Kimble asked the detained individuals for either their identification, such as a driver's license, or their name and date of birth. (*Id.* ¶ 37.) According to Detective Kimble, one of the individuals who was wearing a grey sweatshirt, purported to be Billy Richmond. (*Id.* ¶ 39.) After collecting the individuals' identification, Detective Kimble ran three names with the dispatcher for prior criminal records – Billy Richmond, Marlon Chambers, and Nicholas Lacey. (*Id.* ¶ 40.)

Earlier, Commander Pace proceeded to his surveillance location about 100 to 150 feet from the buy location. (*Id.* ¶ 41.) From his location, Commander Pace saw an individual wearing a grey sweat suit with a hooded sweatshirt interact with the undercover officers. (*Id.* ¶ 43.) Meanwhile, Officers Pawlak and Neubauer informed Detectives Kimble and Franklin by radio that the detained individual who was wearing the grey sweat suit had sold Officer Pawlak the crack cocaine. (*Id.* ¶ 49.) Also, the individual that Detective Franklin identified as Billy Richmond was wearing a grey sweat suit. (*Id.* ¶ 51.)

Using a report prepared by the Task Force Officers, Detective Kimble applied for a warrant to arrest Billy Richmond. (*Id.* ¶ 57.) Officer Kimble presented the warrant application to an Illinois state court judge and swore that the facts contained in the application were true. (*Id.* ¶ 58.) The judge signed the warrant for Richmond's arrest. (*Id.* ¶ 59.) The Robbins police

4

then arrested Richmond pursuant to the warrant secured by Detective Kimble. (*Id.* ¶ 61.)

In September of 2001, Richmond worked as a security guard for the Cubby Bear Lounge in Chicago, Illinois. (*Id.* ¶ 64.) It is his contention that he was working there on September 28, 2001, the same night that the officers assert that he had sold narcotics. (*Id.* ¶ 65.) Richmond's manager at the Cubby Bear Lounge confirmed that Richmond worked there in September of 2001, but could not locate records to establish that Richmond worked on September 28, 2001. (*Id.* ¶ 70.)

At his criminal trial, Richmond contended that he was not the individual who sold narcotics to the undercover officers. (*Id.* ¶ 71.) The jury found Richmond not guilty of delivery of a controlled substance. (*Id.* ¶ 72.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not

sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

### I. Pertinent Case Law

When determining whether qualified immunity shields a police officer from a Section 1983 action, the Court undertakes a two-part inquiry to assess "the objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Leaf v. Shelnutt,* 400 F.3d 1070, 1080 (7th Cir. 2005) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court's first inquiry is whether the facts, viewed in the light most favorable to Richmond, show that Detective Kimble violated a constitutional right. *Leaf,* 400 F.3d at 1080 (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). If the alleged facts state a constitutional violation, the Court must determine whether the constitutional right was clearly established. *Leaf,* 400 F.3d at 1080. "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Id.* (citation omitted).

Here, Richmond asserts that Detective Kimble violated his constitutional right under the Fourth and Fourteenth Amendments by making false statements to a judicial officer when seeking Richmond's arrest warrant. Because Detective Kimble arrested Richmond pursuant to a facially valid warrant, Detective Kimble violated Richmond's constitutional rights only if a reasonably well-trained officer in his position should have known that the affidavits or testimony that he provided to support the arrest warrant would have failed to establish probable cause.

6

*Beauchamp v. City of Noblesville*, 320 F.3d 733, 742 (7th Cir. 2003); *see also Malley v. Briggs,* 475 U.S. 335, 345-46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost"). Accordingly, Richmond must identify evidence showing that Detective Kimble, "knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judicial officer, and that the false statements were necessary to the judicial officer['s] determinations that probable cause existed for the arrest[]." *Beauchamp,* 320 F.3d at 742. Richmond can establish that Detective Kimble acted with reckless disregard for the truth by showing that Detective Kimble had "serious doubts as to the truth of his statements, had obvious reasons to doubt the accuracy of the reported information, or failed to inform the judicial officer of facts that would negate probable cause." *Id.* at 743.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). To have probable cause for an arrest, police officers must reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect has committed or was committing a crime. *United States v. Parra,* 402 F.3d 752, 763-64 (7th Cir. 2005). To determine whether information Detective Kimble submitted to the judicial officer in support of the arrest warrant was sufficient to establish probable cause, the Court looks to what the officer knew at the time he sought the warrant and "not at how things turned out in hindsight." *Beauchamp,* 320 F.3d at 743. As such, a reasonable but mistaken belief that probable cause existed is sufficient for entitlement to qualified

7

immunity. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

**II.     Discussion**

    **A.     Chain of Evidence**

First, Richmond contends that Detective Kimble lied about his involvement in the chain of evidence, that is, how the drugs were linked to Richmond. Richmond argues that there is evidence in the record putting Detective Kimble in a position to falsely attribute the narcotics to him. Furthermore, Richmond contends that both Detectives Kimble and Franklin had a motive to falsely accuse him of selling narcotics.

Many of Richmond's facts supporting his allegations that the officers falsely accused him of selling narcotics are unsubstantiated or in dispute. *See Butts,* 387 F.3d at 924. Richmond cannot defeat summary judgment by simply stating that certain facts exist, he must provide the Court with definite, competent evidence to rebut the summary judgment motion. *Id.* For instance, Richmond contends that Detective Kimble knew him before September 2001 and that one week before the drug deal, an incident occurred involving Detectives Kimble and Franklin that caused Detective Kimble to become angry with Richmond, thereby giving Detective Kimble a motive to falsely accuse him of selling narcotics. To support this allegation, Richmond cites to Detective Kimble's trial testimony where Kimble states that he knew Richmond before the arrest. This testimony, however, does not explain any "incident" or that Kimble was angry as Richmond alleges, and thus does not support Richmond's theory that the officers falsely accused him of selling narcotics. Richmond further supports this allegation with his own trial testimony that he quit working for Detective Franklin because he witnessed a drug transaction between Franklin and another employee. Not only is this allegation disputed, this self-serving testimony,

8

standing alone, does not create a genuine issue of material fact concerning Detectives Kimble's and Franklin's alleged attempt to falsely accused Richmond of selling drugs. *See, e.g., Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 941-42 (7th Cir. 1997) (plaintiff "offers only his own unsubstantiated and self-serving testimony, with no other supporting evidence, and therefore has not established the existence of a genuine issue of material fact").

Furthermore, when viewing the facts in a light most favorable to Richmond, he attempts to draw inferences from the facts that are not reasonable. *See Anderson,* 477 U.S. at 255. For example, Richmond contends that Detective Kimble was in a position to falsely attribute the narcotics to Richmond. To establish this contention, Richmond relies on evidence that Detective Kimble was more than a "bit player" in the Narcotics Task Force. This evidence includes Kimble's responsibilities that he and others decided what the task force was to do each day, that he obtained money for the undercover purchases, that he was present during the field testing of drugs, and that he may have signed the evidence bag containing the crack cocaine at issue.

It is not entirely clear how the evidence Richmond presents is relevant to what Detective Kimble knew at the time he sought Richmond's arrest warrant – the pertinent inquiry in this matter. *See Beauchamp,* 320 F.3d at 742. Nonetheless, Richmond's argument is mere speculation – he is trying to suggest that Detective Kimble had the authority to falsely attribute the narcotics to him, and in fact, did so. Without more, these facts do not establish that the Detective Kimble falsely attributed the drugs to Richmond. Because this argument is mere speculation and demands the making of unreasonable inferences, these factual allegations do not create a genuine issue of material fact for trial. *See Abrams v. Walker,* 307 F.3d 650, 655 (7th Cir. 2002).

### B. Inconsistent Testimony

Second, Richmond argues that Detective Kimble lied about his familiarity with him. Specifically, Richmond relies on Detective Kimble's inconsistent trial and deposition testimony to establish that Detective Kimble acted in reckless disregard for the truth when he sought the arrest warrant. According to Richmond, Detective Kimble testified at trial that he knew Richmond to establish Richmond's identification as the seller. Richmond further argues that at his deposition, however, Detective Kimble changed his testimony to support the theory that he had no idea who Richmond was, and thus Detective Kimble's previous identification was an honest mistake.

Indeed, at trial, Detective Kimble testified that he knew of Richmond through Detective Franklin. At Detective Kimble's deposition testimony, which occurred approximately two and a half years after the trial, Kimble testified that he was not familiar with Richmond before September 2001. Whether this inconsistency is due to a fading memory or reflects something more sinister, as Richmond suggests, evidence in the record indicates that at the time Detective Kimble sought Richmond's arrest warrant, he knew who Richmond was through Detective Franklin. In fact, Detective Franklin's identification of Richmond at the "buy location" is part of the information that formed probable cause for the arrest warrant.

Looking to what Detective Kimble knew at the time he sought the arrest warrant and "not at how things turned out in hindsight," *see Beauchamp,* 320 F.3d at 743, it is undisputed that Detective Franklin told Detective Kimble that he recognized Richmond at the buy location and that Franklin knew Richmond from his landscaping business. After the detectives arrived at the buy location, they detained approximately five individuals, including the individual whom

Detective Franklin identified as Richmond. Meanwhile, Officers Pawlak and Neubauer, who made the undercover buy, identified the seller as a male, black subject wearing a grey hooded sweatshirt and light grey pants. The individual that Detective Franklin identified as Billy Richmond was wearing a grey sweat suit.

The undisputed evidence that Detective Franklin recognized Richmond at the buy location and Detective Kimble's reliance on this identification, bolstered by the undercover officers' identification of the seller, establishes that there was probable cause to believe that Richmond sold the crack cocaine. *See Speigel v. Cortese,* 196 F.3d 717, 726 (7th Cir. 2000) (police officer entitled to qualified immunity when he reasonably relied on information from fellow police officer). Although evidence in the record indicates that Detective Kimble also checked Richmond's state identification, Richmond claims that he had all of his personal identification with him that day and that he was working at the Cubby Bear. This disputed evidence does not save Richmond's claim because the undisputed evidence is sufficient to establish that there was probable cause to believe that he sold the crack cocaine. *See Anderson,* 477 U.S. at 248 (only genuine disputes over material facts – facts that affect the outcome of the lawsuit – prevent a grant of summary judgment).

Finally, Richmond contends that because Detective Kimble concedes Richmond was not the seller, he has established that Detective Kimble did not have probable cause at the time he sought the arrest warrant. For purposes of this summary judgment motion alone, Detective Kimble concedes that Richmond was not the seller because this fact is disputed. Detective Kimble argues that his current belief about the seller's identity is not relevant to the determination of whether Detective Kimble believed probable cause existed when he sought the

11

arrest warrant. The Court agrees. The Court's inquiry is what Detective Kimble knew at the time he informed the judicial officer of facts supporting the arrest warrant and not what Detective Kimble concedes for purposes of his summary judgment motion. *See Beauchamp,* 320 F.3d at 743. Therefore, Richmond's argument lacks merit. The Court further notes that Richmond's acquittal does not support a finding of liability under Section 1983, as Richmond suggests, because acquittals do not establish that probable cause did not exist. *Id.* at 745.

In sum, viewing the evidence in a light most favorable to Richmond, the Court cannot say that the information Detective Kimble provided for the arrest warrant application was so lacking in indicia of probable cause as to render his belief unreasonable. *See Malley,* 475 U.S. at 345-46. Furthermore, Richmond has not established that Detective Kimble acted with reckless disregard for the truth, that is, that Detective Kimble had "serious doubts as to the truth of his statements, had obvious reasons to doubt the accuracy of the reported information, or failed to inform the judicial officer of facts that would negate probable cause." *Beauchamp,* 320 F.3d at 743. Accordingly, the Court grants Detective Kimble's motion for summary judgment as a matter of law based on his qualified immunity.

## CONCLUSION

For these reasons, the Court grants Defendant Dion Kimble's Motion for Summary Judgment.

Date: May 31, 2005

                        **ENTERED**

                        _____
                        AMY J. ST. EVE
                        United States District Court Judge